UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTON PEREVOZNIKOV,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA *et al.*,<br><br>          Defendants. | **MEMORANDUM & ORDER**<br>23-CV-09409 (HG) (RML) |

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Anton Perevoznikov, a former Bureau of Prisons ("BOP") inmate proceeding *pro se*, brings this action for medical malpractice against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671–80 ("FTCA"), and against various Metropolitan Detention Center Brooklyn ("MDC") employees under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging deliberate indifference in violation of the Eighth Amendment in their personal capacities. *See* ECF No. 26-1 ("Amended Complaint" or "AC").[1] Defendants move to dismiss the Amended Complaint. *See* ECF No. 33 (Mot. to Dismiss). For the reasons that follow, the Court GRANTS Defendants' motion and dismisses the Amended Complaint in its entirety.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND

     A.    Factual History[2]

Plaintiff was a federal prisoner formerly housed at the MDC.[3] AC ¶¶ 3, 11. Defendants include the United States of America; Dr. Gerson, a physician at the MDC; PA Joaquin, a physician's assistant; Dr. Bailor, also a physician; and Warden S. Ma'at ("Individual Defendants"). Id. ¶¶ 4–8. Before incarceration, Plaintiff injured his right shoulder in a fall and was diagnosed with tenosynovitis of the long head of the right biceps and rotator cuff impingement. Id. ¶¶ 9–10. His doctor prescribed intensive physical therapy three times per week and advised that surgery might be necessary. Id. ¶¶ 10, 12. Plaintiff was arrested in October 2020 and transferred to the MDC before completing his prescribed treatment. Id. ¶¶ 11–12.

At intake, Plaintiff reported severe asthma, high blood pressure, and his ongoing right shoulder injury requiring physical therapy and possible surgery. Id. ¶ 14. During his 21-day COVID-19 quarantine, he received no medication or therapy despite repeated requests. Id. ¶¶ 15–16. Dr. Gerson told him that medication was unavailable due to COVID-19 and suggested he buy ibuprofen from the commissary. Id. ¶ 17. Plaintiff's lack of access to his asthma inhaler caused severe anxiety. Id. ¶ 18.

After quarantine, Plaintiff repeatedly submitted requests for medical care due to excruciating pain. Id. ¶ 20. In December 2020, Dr. Gerson prescribed Naproxen 500 mg, which

---

[2] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

[3] Plaintiff was released from federal custody as of August 28, 2024. BOP Inmate Locator, https://www.bop.gov/inmateloc (last visited September 26, 2025).

proved ineffective. *Id.* ¶¶ 21–22. Plaintiff's further requests were ignored by Dr. Gerson and Dr. Bailor for three months. *Id.* ¶ 23. In March 2021, PA Joaquin dismissed Plaintiff's complaints, checked only his temperature and blood pressure, and told him to keep waiting despite five months of untreated pain. *Id.* ¶ 24. PA Joaquin also refused to issue a bottom bunk pass despite Plaintiff's difficulty climbing to a top bunk. *Id.* ¶¶ 25–26.

In December 2021, medical staff prescribed Mobic without examination, which triggered a severe allergic reaction causing breathing difficulties, dizziness, vomiting, and skin irritation. *Id.* ¶¶ 28–29. Only the next day did staff recognize those symptoms as a serious allergic reaction and order Plaintiff to stop taking it, but they provided no replacement medication. *Id.* ¶¶ 30–31. Plaintiff later learned Mobic is contraindicated for patients with severe asthma. *Id.* ¶ 32.

In Summer 2022, Plaintiff wrote to Judge Ross, the judge presiding over his criminal case, who ordered the BOP to provide medical attention. *Id.* ¶ 33. Plaintiff was taken to a hospital where a doctor prescribed immediate physical therapy and a new medication, but MDC staff continued to give him only Naproxen, falsely claiming it was what the hospital prescribed. *Id.* ¶¶ 34–36. On a later hospital visit, a doctor showed Plaintiff his electronic medical records confirming a different prescription had been made. *Id.* ¶ 37.

Defendant PA Joaquin later checked in on Plaintiff's physical therapy, and when Plaintiff reported he still had not received it, PA Joaquin called Dr. Bailor, who responded—within Plaintiff's earshot—that Plaintiff should "deal with it" because nothing would be done. *Id.* ¶¶ 38–39. Warden Ma'at denied Plaintiff's administrative remedies despite a hospital order for physical therapy. *Id.* ¶ 40. Plaintiff eventually received a cortisone shot but was told it could not be a long-term solution. *Id.* ¶ 41. Although scheduled to see an orthopedic surgeon, he was later

3

removed from the list without justification. *Id.* ¶¶ 42–44. Plaintiff consistently filed requests and letters seeking treatment, but his condition worsened. *Id.* ¶¶ 45–46.

Plaintiff continues to suffer from numbness, pain, and limitations in daily activities. *Id.* ¶ 57. Plaintiff asserts claims of medical malpractice and deliberate indifference to serious medical needs against the United States and the Individual Defendants. *Id.* ¶¶ 58–73.

### B. Procedural History

Plaintiff filed his complaint on December 18, 2023. *See* ECF No. 1. On August 8, 2024, Defendants filed their first motion to dismiss. *See* ECF No. 19. On October 25, 2024, Plaintiff moved to amend his complaint. *See* ECF No. 26. On October 31, 2024, the Court noted Plaintiff's Amended Complaint did "not appear to address the potential defects identified by Defendants' motion to dismiss, but "[i]n deference to Plaintiff's *pro se* status" granted Plaintiff leave to amend. *See* October 31, 2024, Text Order. The Court ordered Plaintiff to "inform the Court if he would like to proceed with his . . . proposed amended complaint" or "propose a different amended complaint which attempts to remedy the defects identified in the motion to dismiss." *Id.* In response to the Court's order, Plaintiff filed a letter on December 2, 2024, indicating that he wished to proceed with his proposed Amended Complaint, so the Court deemed his Amended Complaint operative. *See* ECF No. 27; December 3, 2024, Text Order. On December 19, 2024, Plaintiff filed another motion to amend, adding claims related to his conditions of confinement at Wyatt Detention Facility in Rhode Island. *See* ECF No. 28. The Court denied that motion because claims related to his conditions of confinement in Rhode Island were not properly brought in this district. *See* December 23, 2024, Text Order.

On January 6, 2025, Defendants filed a letter confirming that they sought to sever Plaintiffs claims related to his incarceration at FCI Danbury.[4] *See* ECF No. 29. On February 10, 2025, the Court severed Plaintiff's claims related to his incarceration at FCI Danbury and transferred those claims to the United States District Court for the District of Connecticut. *See* ECF No. 30. On April 17, 2025, Defendants filed a motion to dismiss the Amended Complaint. *See* ECF No. 33. On August 27, 2025, Plaintiff filed his opposition to the motion to dismiss without a request to further amend. ECF No. 40 (Opp'n). On September 10, 2025, Defendants filed their reply. ECF No. 41 (Reply).

## LEGAL STANDARDS

### A.     Rule 12(b)(6)

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Although all factual allegations in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id*. "[O]n a motion to

---

[4]     According to Defendants' moving papers, Plaintiff was also incarcerated at FCI Danbury during the periods of time in which he alleges improper medical treatment through this action. *See* ECF No. 19-1 n.7. Although Plaintiff only makes passing references to FCI Danbury in his Amended Complaint, *see* AC ¶¶ 42, 48, for the avoidance of doubt, the Court does not consider Plaintiff's claims related to his incarceration at FCI Danbury.

dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).

In addition to requiring sufficient factual matter to state a plausible claim for relief, Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide a short, plain statement of the claim against the defendant so that the defendant has adequate notice of the claims being asserted. *See Iqbal*, 556 U.S. at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678. To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). "Plaintiff must allege sufficient facts to state a plausible claim against each defendant named in his amended complaint." *Mitchell v. Macy's Inc.*, No. 17-cv-1845, 2017 WL 11453552, at *4 (S.D.N.Y. May 3, 2017). A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020). "A pro se litigant, however, is not exempt 'from compliance with relevant rules of procedural and substantive law.'" *Ramos-Nunez v. United States*, No. 14-cr-102, 2019 WL

6

1300811, at *4 (S.D.N.Y. Mar. 21, 2019) (quoting *Traguth v. Zuck*, 710 F.2d 90, 96 (2d Cir. 1983)).

### B. Bivens Framework

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016). There, the Supreme Court implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against federal narcotics agents for handcuffing a man in his own home without a warrant. *Bivens*, 403 U.S. at 389. Since then, the Supreme Court has recognized *Bivens* claims in only two other circumstances: (1) under the Fifth Amendment's due process clause for gender discrimination against a Congressman for firing his female secretary, *see Davis v. Passman*, 442 U.S. 228 (1979), and (2) under the Eighth Amendment's prohibition on cruel and unusual punishment against prison officials for failure to treat an inmate's asthma which led to his death, *Carlson v. Green*, 446 U.S. 14 (1980).

"Since these cases, the [Supreme] Court has not implied additional causes of action under the Constitution. Now long past the heady days in which th[e] [Supreme] Court assumed common-law powers to create causes of action, [the Supreme Court] ha[s] come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). "Given the notable change in the [Supreme] Court's approach to recognizing implied causes of action . . . the Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). When asked to imply a *Bivens* action, the Supreme Court's "watchword is caution" and "[e]ven a single sound reason to defer

7

to Congress is enough to require a court to refrain from creating such a remedy." *Egbert*, 596 U.S. at 491.

The Supreme Court has instructed district courts to proceed in two steps when analyzing a *Bivens* claim:  (1) "ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action," then, (2) "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492.  However, "those steps often resolve to a single question:  whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*  Furthermore, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Id.* at 493.

        C.     *Eighth Amendment*

To establish a violation of the Eighth Amendment, a plaintiff must demonstrate that: (1) objectively, the deprivation that the inmate suffered was "sufficiently serious that he was denied the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant officials acted with "a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).

        D.     *FTCA Framework*

As a general matter, "the United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Where an "unequivocally expressed" waiver of sovereign immunity is evident by virtue of "clear congressional consent," the terms of any such "consent to be sued . . . define [the] court's

8

jurisdiction to entertain the suit." *Id*. The FTCA constitutes an explicit waiver of sovereign immunity for "claims against the United States, for money damages . . . [for] personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *See* 28 U.S.C. § 1346(b)(1).

An FTCA claim is determined "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," *id.*, in this case, New York. The FTCA is "the exclusive remedy for a suit for damages for injury" caused by a government employee acting within the scope of their employment. *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991). This means that "the FTCA makes individual government employees immune from common-law tort claims for acts committed within the scope of their employment." *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). Plaintiff's medical malpractice claim under the FTCA must be analyzed under New York law. *See Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991) (explaining that "the FTCA defines the liability of the United States in terms of that of a private individual under the law of the state where the alleged tort occurred").

    E.  *Medical Malpractice*

"Under New York law, the essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." *Ongley v. St. Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018). "In order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered as a result of the deviation from accepted medical practice and allege sufficient facts

9

to demonstrate how his injuries were caused by a deviation from the standard of care." *Carter v. United States*, No. 22-cv-6715, 2024 WL 1345313, at *5 (E.D.N.Y. Mar. 29, 2024).

## DISCUSSION

### I. The *Bivens* Claim

Plaintiff's Eighth Amendment claim fails because there is no available *Bivens* remedy for the conduct alleged. Although *Carlson* created a *Bivens* remedy under the Eighth Amendment, Plaintiff's facts are significantly different, and he has failed to plausibly allege either a "serious medical need" or "deliberate indifference" by Defendants. *See Davis v. Florence*, 600 F. App'x 26, 27 (2d Cir. 2015) (affirming dismissal of Eighth Amendment claim); *see also Nasiruddin v. Pliler*, No. 21-cv-7044, 2024 WL 2262664, at *9 (S.D.N.Y. May 17, 2024) (dismissing plaintiff's Eighth Amendment claim under *Bivens* where there were "no allegations in any of his submissions from which it can be plausibly inferred that any of his injuries presented a life-threatening medical emergency of the sort at issue in *Carlson*").

"Although the Supreme Court recognized a *Bivens* remedy under the Eighth Amendment in *Carlson*, this does not mean all Eighth Amendment claims have a *Bivens* remedy." *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) (citing, *inter alia*, *Ziglar*, 582 U.S. at 147). In *Carlson*, the Supreme Court held that the Eighth Amendment gave a prisoner's estate a monetary remedy because the federal jailers caused the prisoner's death by failing to treat his asthma. *See generally Carlson*, 446 U.S. 14. The defendants in Carlson had been "fully apprised" of the "gross inadequacy" of the medical conditions at the plaintiff's prison. *Id*. at 16 n.1. They had also been fully apprised of the nature and severity of the plaintiff's medical condition. *Id.* The defendants failed to provide the plaintiff with medical care for 8 hours after an asthmatic attack. *Id.* They gave him medication

10

that exacerbated the attack and treated him with medical equipment that was known to be ineffective. *Id.* All of that misconduct resulted in the plaintiff's death.

Here, the alleged deprivations are far less serious. "[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Plaintiff's allegations that he was denied physical therapy and prescribed ineffective pain medication for his pre-existing shoulder injury "are not of the type of claims that the Eighth Amendment is meant to remedy, much less in the *Bivens* context." *See Gonzalez*, 269 F. Supp. 3d at 64–66 (finding that plaintiff's claims that defendants' denial of dental hygiene supplies caused plaintiff to develop a cyst requiring surgical removal and unsupportive shoes led to a knee injury did not come within the "ambit covered by *Carlson*"); *accord Bravo v. U.S. Marshal Serv.*, 684 F. Supp. 3d 112, 125 (S.D.N.Y. 2023) (finding that pretrial detainee's allegations of fever and injuries to his spine, pelvis, and wrist were distinguishable from the injuries and medical mistreatment in *Carlson*); *Edwards v. Gizzi*, No. 20-cv-7371, 2022 WL 309393, at *7 (S.D.N.Y Feb. 2, 2022), *aff'd*, 107 F.4th 81 (2d Cir. 2024) (deliberate indifference claim concerning a broken arm which caused "extreme pain" presented a new *Bivens* context). Therefore, this case presents a "new *Bivens* context," *Egbert*, 596 U.S. at 492, and the Court must consider whether to engage in the "disfavored judicial activity" of expanding the *Bivens* remedy, *Ziglar*, 582 U.S. at 135, which it cannot do if there is "even a single reason to pause before applying *Bivens* in a new context," *Egbert*, 596 U.S. at 492.

One such reason here is that Plaintiff had an alternative remedy available through the BOP Administrative Remedy Program, which he appears not to have exhausted.[5] The existence

---

[5] Defendants contend that Plaintiff's *Bivens* claim is barred for failure to exhaust under the Prison Litigation Reform Act ("PLRA"). *See* ECF No. 33-1 at 17–20. The PLRA provides that

11

of this remedial structure forecloses a *Bivens* action. *See Egbert*, 596 U.S. at 493 ("If there are alternative remedial structures in place, that alone . . . , is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action."); *see also Ziglar*, 582 U.S. at 145 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."); *Carter*, 2024 WL 1345313, at *12 ("Plaintiff's *Bivens* claim is foreclosed because the BOP Administrative Remedy Program is the proper vehicle for relief."). Accordingly, because Plaintiff's allegations do not fall within the narrow contexts where a *Bivens* remedy has been recognized, and because the Supreme Court strongly discourages expanding the *Bivens* remedy, especially where alternative remedial structures were available, Plaintiff's Eighth Amendment claim must be dismissed.

## II.   The FTCA Claim

Plaintiff alleges that Defendants committed medical malpractice in treating his pre-existing shoulder injury by refusing to provide physical therapy, prescribing a medication that

---

"no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, the Second Circuit has held that exhaustion under the PLRA is an affirmative defense, not a pleading requirement. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Although the Government has submitted material purportedly demonstrating non-exhaustion, the Court declines to convert the motion to dismiss to a motion for summary judgment, because non-exhaustion is not apparent from the face of the Amended Complaint and, in any event, the Court disposes of Plaintiff's claims on other grounds. *See Carter*, 2024 WL 1345313, at *12 ("Although Plaintiff's [papers] . . . suggest[] that he has not complied with the PLRA exhaustion requirement, the Court does not dismiss Plaintiff's *Bivens* claim on that basis.").

12

caused an allergic reaction, and disregarding his complaints that his pain management plan was ineffective. AC ¶¶ 58–70.

### A. Individual Defendants

As an initial matter, any attempt by Plaintiff to assert an FTCA claim against the Individual Defendants is barred. As noted previously, an FTCA claim can only be asserted against the United States and the FTCA is the exclusive remedy for allegations of tortious conduct, such as medical malpractice, committed by a government employee acting within the scope of their employment. *Rivera*, 928 F.2d at 609. "Therefore, to the extent Plaintiff alleges FTCA claims against . . . any individual MDC staff member, they are dismissed." *Carter*, 2024 WL 1345313, at *8.

### B. United States of America

Plaintiff adequately alleges that the Government owed him a duty of care. However, Plaintiff fails to allege sufficient facts to establish a *prima facie* case of medical malpractice because he does not explain how either the delay in treatment or the treatment itself "deviated from accepted medical practice," or how any deviation proximately caused a specific injury. *See Isaac v. City of New York*, No. 17-cv-1021, 2018 WL 1322196, at *8 (S.D.N.Y. Mar. 13, 2018) (dismissing claim where plaintiff did not "specify what injuries he allegedly suffered as a result of the alleged medical malpractice").

The Amended Complaint recounts Plaintiff's course of treatment at MDC for his pre-existing shoulder condition, but does so in generalized and conclusory terms. It vaguely mentions "ineffective" medication, AC ¶ 22, a general "lack of appropriate care," *id.* ¶ 49, and "undue pain and suffering," *id.* ¶ 46, without identifying the accepted medical practice required in these circumstances or how Defendants' conduct fell short. Plaintiff's assertion that

13

Drs. Bailor, Gerson, and PA Joaquin "all refused to provide [him] with the physical therapy" he required, *id.* ¶ 61, similarly lacks factual support. The sort of medical treatment a plaintiff asserts he was supposed to receive does not, by itself, "establish the standard of care in the locality where the treatment occurred, nor does it allow a reasonable inference that the care plaintiff received for his injury fell below the standard of care in the locality where he received treatment." *Levinson v. United States*, No. 23-cv-05598, 2025 WL 1548806, at *5 (E.D.N.Y. May 30, 2025). "[B]oilerplate statements that [the] defendant[s] deviated from the acceptable standards of medical care, and that those acts were the direct and proximate cause of the plaintiff's injury, are not sufficient to state a claim." *Id.* at *4.

Plaintiff's causation allegations are also deficient. He claims he was forced to undergo "otherwise avoidable surgery," *id.* ¶ 64, but elsewhere acknowledges that, before his incarceration, his physician had already advised that his shoulder injury would "probably also require surgery," *id.* ¶ 14. That admission undermines any inference that Defendants' alleged acts or omissions caused the surgery.

By contrast, courts have allowed inmate medical malpractice claims to proceed when the complaint plausibly alleged both the relevant medical standard and the way defendants' conduct caused injury. *See*, *e.g.*, *Costin v. Glens Falls Hosp.*, No. 22-cv-296, 2024 WL 4979175, at *8 (N.D.N.Y. Dec. 4, 2024) (denying motion to dismiss where the complaint plausibly alleged that defendant hospital's "Bill of Rights promise[d] [p]laintiff the rights to refuse treatment" and that defendant "ignored Plaintiff's treatment refusals"); *Rivera v. Fed. Bureau of Prisons*, No. 17-cv-05103, 2018 WL 11312146, at *11 (S.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 368 F. Supp. 3d 741 (S.D.N.Y. 2019) (denying motion to dismiss where plaintiff alleged that "reductions in his methadone doses of more than 10 percent at a time not only

14

deviated from acceptable medical practice, as evidenced both by the practice at Albert Einstein [College of Medicine] and the BOP's own guidelines, but also caused him injury"). No such allegations appear here.

Accordingly, because Plaintiff has not plausibly alleged "a deviation from the standard of care or that this deviation from the standard of care caused him injury," his medical malpractice claim against the United States must be dismissed. *Isaac*, 2018 WL 1322196, at *8.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's Amended Complaint is GRANTED.[6] S*ee* ECF No. 33. The Court declines to issue a certificate of appealability and certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). The Clerk of Court is respectfully directed to enter judgment consistent with this Order, mail a copy of this Order to *pro se* Plaintiff, and close this case.

SO ORDERED.

                                                          */s/ Hector Gonzalez*
                                                            HECTOR GONZALEZ
                                                            United States District Judge

Dated: Brooklyn, New York
           September 26, 2025

---

[6] Plaintiff did not request leave to amend his complaint for a second time. *See generally* ECF No. 40. "While leave to amend under the Federal Rules of Civil Procedure is freely granted, no court can be said to have erred in failing to grant a request that was not made." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013).